**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Cutberto R.P.,

        Petitioner,

v.

Todd Blanche, Acting Attorney
General, et al.,[1]

        Respondents.

**ORDER GRANTING SECOND
PETITION FOR WRIT OF HABEAS
CORPUS**

Civil File No. 26-01934
(MJD/DTS)

---

Taylor Jon Volkman, I, Carthew & Volkman, PLLC, Counsel for Petitioner.

Trevor Brown, David W. Fuller, Assistant United States Attorneys, Counsel for Respondents.

---

This matter is before the Court on Petitioner Cutberto R.P.'s Second Petition

for Writ of Habeas Corpus. (Doc. 1.) This is Petitioner's second habeas petition,

with the first being dismissed without prejudice by this Court. Cutberto R.P. v.

Bondi, No. 26-cv-1799 (MJD/DTS) (D. Minn. Mar. 10, 2026 Petition). Petitioner

claims he is currently unlawfully detained in violation of the Immigration and

---

[1] On April 2, 2026, Todd Blanche became Acting Attorney General, replacing Pamela Bondi.  On March 23, 2026, Markwayne Mullin became Secretary of the Department of Homeland Security, replacing Krisi Noem, who is also a respondent in this matter.  The Court substitutes them as respondents in their official capacities.  Fed. R. Civ. P. 25(d).

Nationality Act, the Administrative Procedure Act, the Fourth Amendment, and the Fifth Amendment's Due Process Clause. Respondents challenge Petitioner's arguments, maintaining that Petitioner is properly detained pursuant to 8 U.S.C. § 1226 after being denied release on bond.

I.   **FACTS[2]**

Petitioner is a citizen of Mexico and resident of North Dakota. (Doc. 1 ¶ 9.) Petitioner entered the United States in 2020 at a checkpoint with a valid visitor's visa. (Id. ¶ 15.) Petitioner's visa was issued on September 19, 2014 and expired on September 14, 2024. (Id.)

Petitioner currently resides in New Town, North Dakota. (Id. ¶ 16.) He lives with his wife and their three children, two of whom are minors. (Id. ¶ 17.) He is an active member of his community, attends church every Sunday, and spends most of his free time with his family. (Id. ¶ 17–19.) For work, Petitioner rents space at a local shop and works as a car mechanic. (Id. ¶ 18.) Petitioner is the sole financial provider for the family. (Id.)

On January 6, 2026, Petitioner's spouse picked him up from work with their two minor children in the back. (Id. ¶ 20). Around midnight, the car was

---

[2] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

pulled over by the New Town Police Department ("NTPD"). (Id.) The NTPD officers stated that they stopped the car because the vehicle had a broken headlight. (Id. ¶ 21; Doc. 7-2 at 4.) NTPD officers report asking Petitioner for his identification, to which he provided "an expired border crossing card" and "spoke only in Spanish." (Doc. 7-2 at 4.)

NTPD contacted ICE and spoke with Border Patrol Agent W. Lowry. (Id.; Doc. 1 ¶ 21.) Agent Lowry allegedly conducted a record check on Petitioner and then spoke directly with him. (Doc. 7-2 at 4). While speaking with Petitioner, Agent Lowry reported that Petitioner indicated that he was a citizen of Mexico, had an expired visa, and did not have any immigration documents that permitted him to live, work, or reside legally in the United States. (Id.) Agent Lowry then instructed the NTPD to arrest Petitioner. (Id.; Doc. 1 ¶ 22.) Petitioner was detained and taken to Mountrail County Jail in Stanley, North Dakota. (Id.; Doc. 1 ¶ 27.) Petitioner was then transported to the Minot airport for processing. (Id.)

Petitioner and Respondent agree that at the time of Petitioner's arrest, Respondents did not have a warrant or a Notice to Appear ("NTA"). (Doc. 1 ¶ 24; Doc. 6 at 6). Instead, both parties maintain that the warrant and NTA were

generated after his arrest. (Doc. 1 ¶¶ 28–30; Doc. 6 at 6.) Petitioner makes various allegations about the authenticity of the warrant and the NTA, raising doubts about when it was signed and when it was served. (Doc. 1 ¶¶ 28–34.)

On February 27, 2026, an immigration judge conducted a bond/custody redetermination hearing for Petitioner pursuant to 8 C.F.R. § 1236. (Doc. 1-5.) Bond was denied. (Id.) Petitioner was then transferred to the Kandiyohi County Jail in Willmar, Minnesota. (Doc. 1 ¶ 37.) On March 10, 2026, an immigration judge entered a removal order against Petitioner. (Doc. 1-6.) Such order is not final, and Petitioner "intends to timely appeal" it. (Doc. 1 ¶ 38).

On March 10, Petitioner filed a Petitioner for Writ of Habeas Corpus. See Cutberto R.P. v. Bondi, No. 26-cv-1799 (MJD/DTS) (D. Minn. Mar. 10, 2026 Petition) ("Cutberto I"). Petitioner initially argued that Petitioner was being illegally detained based on the Respondents' invocation of 8 U.S.C. 1225(b). See id. Petitioner argued that his detention, if permitted at all, could only be pursuant to 8 U.S.C. § 1226. Id. Petitioner also argued that the Respondents' lack of warrant pre-dating his arrest, a necessary prerequisite for detention under § 1226, required his immediate release. Id.

4

Respondents pointed out to Petitioner that he was not detained pursuant to § 1226, and that he was detained pursuant to § 1225. Cutberto I, at doc. 8. Internal communication provided to the Court in the present matter reveals that Petitioner's counsel believed that regardless of Respondents' clarification of the legal basis for Petitioner's detention, the Court would be able to "analyze the warrant based on [Petitioner's] submissions." (See Doc. 9-1 at 1.)

However, the Court did not receive any documentation regarding the previous bond hearing or the warrant at all. As such, the Court was unable to meaningfully consider Petitioner's claims and dismissed Petitioner's initial habeas petition. Cutberto I, at doc. 9.

Petitioner has submitted a new habeas petition "alleg[ing] additional facts and different legal theories." (Doc. 1 ¶ 2.) Petitioner now argues that his detention 1) violates his Due Process rights, 2) violates the Immigration and Nationality Act ("INA"), 3) violates the Administrative Procedure Act and the Accardi doctrine, and 4) violates the Fourth Amendment and 8 U.S.C. 1357(a)(2).

The Court will turn to the arguments below.

## II.    DISCUSSION

## 1.    Duplicative Filing

First, Respondents point out that the Court is "not required to entertain" a habeas petitioner "if it appears that the legality of such detention has been determined" previously. (Doc. 6 at 4 (citing 28 U.S.C. § 2244(a)). While 28 U.S.C. § 2244(a) does bar detainees from filing successive habeas petitions re-raising the same claims, this Court did not determine the "legality of [Petitioner's] detention" at all. 28 U.S.C. § 2244(a). In denying Petitioner's first Petition for Writ of Habeas Corpus, the Court emphasized that Petitioner failed to provide the Court with the necessary documentation to effectively evaluate Petitioner's claims, despite Petitioner and Respondents clearly being in possession of such materials. See Cutberto R.P. v. Bondi, No. 26-cv-1799 (MJD/DTS) (D. Minn. Mar. 18, 2026) ("[Petitioner] admits that Respondents provided a warrant and an NTA, but he then failed to explain how those documents were deficient."). The denial was necessarily not based on the merits, as the Court explicitly emphasized that it lacked the information needed to assess the claims.

Further, the email exchange between Petitioner and Respondents provided to the Court during Cutberto I demonstrates how Respondents acknowledged

6

that Petitioner's counsel could reasonably understand this matter to be a standard §1225/§ 1226 case. (See Doc. 9-1 at 3 (Respondents indicated to Petitioner's counsel that "I'm not blaming you—you reasonably thought this was a 1225/1226 case until I shared the documents with you."). To the extent that Respondents believed that accusing Petitioner's counsel of strategically misleading the Court would influence how the Court considered the duplicative/preclusion arguments presented, that tactic was not only woefully misguided, but mean-spirited.

Where there was confusion with the initial petition, the Court presumes it came from the lack of ability for Petitioner's counsel to communicate with his client before filing the initial Petition. Moreover, the expedited nature of the immigration enforcement actions spanning the Twin Cities metro area and beyond these past several months created a pronounced sense of urgency in filing these petitions.

In his second Petition, Petitioner has provided extensive documentation to support his robust factual allegations. (See Doc. 1 at 4–9.) Petitioner has also clarified that his arguments focus on Respondents' lack of warrant at the time of the arrest, the allegedly-erroneous post-arrest issuance of a warrant, and the

Respondents' failure to follow their own procedures for arrests that occur without a warrant. (Id. at 11–15.) To support their arguments, Petitioner provides copies of the a DHS Notice to Appear ("NTA"), Warrant for Arrest of Alien (an "I-200"), the results of the previous custody redetermination petition, and the Immigration Court's removal order. (See Docs. 1-3; 1-4; 1-5; 1-6.)

The Court will now turn to the merits of Petitioner's arguments – an opportunity it did not have last time.

## 2. Warrant

Petitioner was arrested before either an NTA or a warrant was issued. (Doc. 1 ¶ 49.) Respondents do not dispute this fact; instead, they contend that the warrantless arrest was authorized by statute and they complied with the applicable post-warrantless arrest regulatory procedures. (Doc. 6 at 5–6.) Petitioner challenges these assertions, arguing that the Respondents lacked the probable cause necessary to justify a warrantless arrest and failed to follow the required procedures after the arrest. (Doc. 8 at 3–5.)

Because the Respondents do not assert that Petitioner was arrested pursuant to a warrant, the Court does not need to evaluate this claim. Instead,

the Court must consider the statutory framework for warrantless arrests of noncitizens, which is a convoluted maze of statute and regulations.

The INA specifically enumerates the "powers" of immigration officers to act without a warrant. See 8 U.S.C. § 1357. The statute permits officers to arrest a noncitizen without a warrant if they have "reason to believe" that 1) "the alien . . . is in the United States in violation of any such law or regulation," and 2) "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). The statute then clarifies that after such warrantless arrest, noncitizens "shall be taken without unnecessary delay for examination before an officer of the Service . . . to examine the aliens as to their right to enter or remain in the United States." Id.

This is where the regulations come in. 8 C.F.R. § 287.3 lays out the requirements following a warrantless arrest of a noncitizen. Among other things, the regulations require that within 48 hours, a determination of "whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest . . . will be issued." 8 C.F.R. § 287.3(d).

Respondents argue that the officers complied with these regulations because within 48 hours, Respondents signed a warrant for Petitioner's arrest and referred Petitioner to immigration proceedings, which resulted in an NTA. (Doc. 6 at 6.) Respondents fail, however, to meaningfully address the statutory pre-requisite to invoke these procedures – namely, that the officers had "reason to believe" both that Petitioner was not lawfully present in the United States and was likely to escape before officers could obtain a warrant in accordance with 8 U.S.C. § 1357(a)(2).

Section 1357 implicates the Fourth Amendment's protections. Specifically, The Fourth Amendment protects all individuals from "unreasonable searches and seizures." U.S. Const. amend. IV. An arrest qualifies as a "seizure" and therefore must be supported by probable cause. United States v. Miller, 974 F.2d 953, 956 (8th Cir. 1992). The Eighth Circuit has made clear that the Fourth Amendment's protections apply to "seizures" of noncitizens. See United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010). Because § 1357(a)(2) implicates seizures of noncitizens, the Eighth Circuit has also stated that the statute's use of the term "reason to believe" means "constitutionally required probable cause." Id. Probable cause exists when, based on the totality of the circumstances, the

10

facts are "sufficient to lead a reasonable person to believe that the suspect has committed or is committing an offense." Garang v. City of Ames, 2 F.4th 1115, 1121 (8th Cir. 2021).

Putting this all together, for the warrantless arrest of Petitioner to be valid under § 1357(a)(2), Respondents must have had probable cause to support that Petitioner was 1) not lawfully present and 2) likely to escape before they could get a warrant based on the totality of the circumstances.

The facts support that there was probable cause to believe that Petitioner was unlawfully present in the United States. When NTPD questioned Petitioner during the traffic stop[3], Petitioner provided an expired Border Crossing Card, indicated he was a citizen of Mexico, and did not provide any valid immigration documents. Such failure to provide necessary documents can support a probable cause finding that someone is not legally present in the United States. See e.g., United States v. Puebla-Zamora, 996 F.3d 535, 538 (8th Cir. 2021) (finding that there was probable cause for a warrantless arrest when the noncitizen "present[ed] a Mexican passport as his only identification, [and] admitted that he

---

[3] Petitioner does not allege in his Petition, nor argue in his brief, that NTPD erred in stopping Petitioner's car in the first place and asking him questions.

11

didn't have any documents that would allow him to be in the United States legally") (quotation omitted).

Whether there was probable cause to support a finding that Petitioner was likely to escape before a warrant could be issued is another story entirely. A determination that someone is "likely to escape" requires a "particularized assessment" of the unique circumstances at issue. Orellana v. Nobles Cnty., 230 F. Supp. 3d 934, 946 (D. Minn. 2017). Any noncitizen without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen. See Moreno v. Napolitano, 213 F.Supp.3d 999, 1007 (N.D. Ill. Sept. 30, 2016) ("[it cannot] be the case that, simply by being potentially removable, an alien must be deemed to be likely to evade detention by ICE. Such a reading would render the limitations on warrantless arrest created by 8 U.S.C. §§ 1226(a) and 1357(a)(2) meaningless.").

Respondents here do not even argue that the officers maintained probable cause to support a finding that Petitioner was likely to escape before they could obtain a warrant. Respondents merely re-state the language of the statute without providing any additional analysis. (See Doc. 6 (stating that Agent Lowry asked the officer to detain Petitioner which was "consistent with the provisions

12

of 8 U.S.C. § 1357(a), allowing immigration officers to take a non-citizen into custody if they believe the person is unlawfully in the United States and is likely to escape before a warrant can be obtained").)

The Respondents' failure to support the required particularized determination that Petitioner was likely to escape is, on its own, sufficient to grant the petition. See Orellana, 230 F. Supp. 3d, at 946 ("Without any showing that [Defendant] was likely to escape before a warrant could be secured, the warrantless arrest made under § 1357(a)(2) violates the Fourth Amendment.") However, the record independently demonstrates that Respondents lacked probable cause to believe Petitioner was likely to escape before a warrant could be issued. Petitioner made no attempt to drive away or flee on foot, unlike in a case where such a finding was justified. See e.g., Zhuang v. Bondi, No. 1:25-CV-00201-CMS, 2026 WL 352872, at *2 (E.D. Mo. Feb. 9, 2026) (finding that the arresting agent had reason to believe that Petitioner was "likely to escape" when he attempted to flee during his stop."); Luis G.G. v. Noem, No. 5:26-CV-05023-KES, 2026 WL 836807, at *2 (D.S.D. Mar. 26, 2026) (finding that Petitioner was "highly likely to flee" because officers knew he was a "a passenger in a vehicle

13

whose driver rammed a government vehicle, fled, and twice attempted to evade arrest.").

To the contrary, as Petitioner points out, his family resides in North Dakota, he maintains stable work in his town, and he is a valued member of the community. (Doc. 1 ¶¶ 16–19.) There is no basis on these facts, and no reason for the Court to speculate on its own, that Respondents had reason to believe that Petitioner was "likely to escape" before officers could obtain a warrant for his arrest.

Judge Provinzino said it best when similarly tasked with wading through the sea of statutes and regulatory requirements for DHS procedures and warrantless arrests that the default rule for Respondents to remember is to "get a warrant." See Fernando C. C. v. Bondi, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *4 (D. Minn. Feb. 17, 2026).

### III.    Remedy

Because the Court finds that Respondents did not act within their statutory authority in effectuating Petitioner's warrantless arrest, the Court finds that Respondents have not offered any lawful basis for Petitioner's continued detention. As such, release is the appropriate remedy. See e.g., Ahmed M. v.

14

Bondi, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026)

("Where the record shows Respondents have not identified a valid statutory

basis for detention in the first place, the remedy is not to supply one through

further proceedings.") (quoting Vedat C. v. Bondi, No. 25-cv-4642 (JWB/DTS) (D.

Minn. Dec. 19, 2025) (Doc. 9 at 6.)).

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1. The Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** as follows:

    a. Respondents are ordered to arrange for the immediate release of Petitioner into Minnesota at a safe time and in a safe place that is communicated at least eight (8) hours in advance to Petitioner's counsel;

    b. Respondents are ordered to immediately return all Petitioner's personal items that were taken from him when he was detained in substantially the same condition as when the items were taken during his arrest, such as his driver's license, immigration papers, passport, cell phone, and keys;

    c. Petitioner shall be released on his own recognizance without any conditions upon his release; and

2. Respondents are ordered to confirm Petitioner's release from custody as well as the Respondents' compliance with the rest of the Court's Order within forty-eight (48) hours from the date of this Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: April 10, 2026                    s/Michael J. Davis
                                         Michael J. Davis
                                         United States District Court